# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ERIC J. FORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-13-1013-R |
| | ) | |
| GEO GROUP INC. et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Eric J. Ford, a state prisoner appearing pro se, brings this action under 42 U.S.C. § 1983, alleging violations of his Eighth Amendment rights under the United States Constitution, as well as a state-law negligence claim. United States District Judge David L. Russell has referred this matter to the undersigned Magistrate Judge for initial proceedings pursuant to 28 U.S.C. § 636.

Defendants GEO Group Inc. ("GEO"), H.A. Rios Jr., and Robert Pine (collectively, "Defendants") have moved for summary judgment on Plaintiff's constitutional claims, and Plaintiff has responded. *See* Defs.' Mot. Summ. J. (Doc. No. 28) ("Defs.' MSJ"); Pl.'s Resp. (Doc. No. 33).[1] Defendants additionally have filed a Special Report (Doc. No. 26) ("S.R.") in accordance with the Court's order (Doc. No. 8) and *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

---

[1] Defendant H.A. Rios Jr. was identified, mistakenly, in Plaintiff's Complaint as "R.A. Rios Jr." *See* Defs.' MSJ at 1 n.1. Defendant Rios, as LCF Warden, and Defendant Pine, as LCF Correctional Health Services Administrator, are sued in their individual capacities. *See* Compl. ¶¶ 4-7 (Doc. No. 1).

Having considered the arguments, pleadings, and evidentiary materials submitted by the parties, the undersigned recommends that summary judgment be granted in favor of Defendants on Plaintiff's constitutional claims and that the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law negligence claim.

PLAINTIFF'S CLAIMS

Plaintiff's claims arise out of events occurring at Lawton Correctional Facility ("LCF") in Lawton, Oklahoma, primarily in March and April 2013. *See* Compl. ¶¶ 2, 11-28. *See generally* March 21, 2014 Aff. of Eric Juan Ford (Doc. No. 32) ("Pl.'s Aff."). LCF is a private prison owned and operated by GEO, which is under contract with the Oklahoma Department of Corrections ("ODOC") to house Oklahoma inmates. Defs.' MSJ at 2; Pl.'s Resp. at 2. Plaintiff alleges that in 2009 he was diagnosed with eczema by a dermatology specialist and prescribed triamcinolone acetonide ointment. *See* Compl. ¶¶ 11-12. Plaintiff further alleges that, beginning in January 2013, his attempts to have this prescription refilled and his condition reviewed by a physician were thwarted. *Id.* ¶¶ 12-22. Liberally construed, Plaintiff asserts that he has not received an adequate response to his eczema-related complaints to prison officials and, as a result, Plaintiff is experiencing "an itch, a burning sensation, a sting, and scar[r]ing in affected areas on his body." *Id.* ¶¶ 12-22.

Plaintiff claims that Defendant GEO's custom of impeding Plaintiff's access to health care, as well as Defendant Rios' alleged failure to carry out his responsibilities to provide adequate medical care and Defendant Pine's alleged failure to respond to Plaintiff's medical complaints, constitutes deliberate indifference to Plaintiff's serious

2

medical needs in violation of the Eighth Amendment. *Id.* ¶¶ 21, 24-28, 30-32. Further, Plaintiff asserts a negligence claim under Oklahoma law. *See id.* at 1-2; *see also* Pl.'s Resp. 19-24. Plaintiff seeks compensatory and punitive damages[2] as well as declaratory relief. *See* Compl. ¶¶ 33-41.

## STANDARD OF REVIEW

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court views the evidence and the inferences drawn from the record in the light most favorable to the non-moving party. *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). While the Court construes a pro se litigant's pleadings liberally, such a litigant nevertheless is held to the same rules of procedure as are binding on other litigants. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence

---

[2] To the extent Plaintiff is suing on account of mental or emotional injury, the damages he may recover under 42 U.S.C. § 1983 are limited absent "a prior showing of physical injury." *See* 42 U.S.C. § 1997e(e).

admissible at trial to allow a reasonable jury to find in the nonmovant's favor, i.e., to show that there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Parties may establish the existence or nonexistence of a material disputed fact through:

- citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" in the record; or
- demonstration "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B).

A defendant seeking summary judgment on the basis of an affirmative defense must show that the undisputed material facts establish *all* of the elements of the defense. *See Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997) ("The defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted."). If the defendant meets this burden, the burden shifts to the plaintiff to cite evidentiary material that shows there is a genuine factual dispute as to one or more elements of the affirmative defense, absent which summary judgment should be granted in favor of the defendant. *Id*.

ANALYSIS

*A. Whether Defendants Are Entitled to Summary Judgment Based on Their Affirmative Defense That Plaintiff Failed to Exhaust Administrative Remedies*

Defendants seek summary judgment on the basis of their affirmative defense that Plaintiff's claims are barred because Plaintiff did not, prior to commencing this lawsuit, exhaust his available administrative remedies as required by the Prison Litigation Reform

Act of 1995 ("PLRA"), codified in pertinent part at 42 U.S.C. § 1997e(a). *See* Defs.' MSJ at 2, 3-5; S.R. at 4-6; S.R. Ex. 13, Jan. 24, 2014 Aff. of Deborah Johns (Doc. No. 26-13) ("Johns Aff.") ¶ 3. *See generally Jones v. Bock*, 549 U.S. 199, 219-20 (2007) ("All [courts] agree that no unexhausted claim may be considered.").

1. The PLRA

The PLRA provides that no action under 42 U.S.C. § 1983 may be brought by a prisoner regarding conditions of confinement "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 90, 93-103 (2006) (explaining that Section 1997e(a) requires "proper exhaustion"—i.e., "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)" (internal quotation marks omitted)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Ngo*, 548 U.S. at 90-91.

2. The Oklahoma Department of Corrections' Offender Grievance Process

ODOC has adopted an Offender Grievance Process, OP-090124, through which a prisoner in its custody may seek formal administrative decisions or answers to complaints. *See* OP-090124 (eff. Jan. 29, 2013) (Pl.'s Aff. at 26-50). The ODOC Grievance Process requires an inmate initially to attempt informal resolution of the complaint by speaking to an appropriate staff member within three days of the relevant incident. *Id.* § IV(B). If the inmate is dissatisfied after this initial attempt, then he or she may submit a written "Request to Staff" within seven days of the incident. *Id.* § IV(C).

This first informal level may be bypassed only if the complaint involves a sensitive topic or an emergency. *Id*. § VIII(A).

The next level of the ODOC Grievance Process is the filing of a formal Grievance. If dissatisfied with the response received from a Request to Staff, the inmate may file a grievance within fifteen days of the incident or of the date of the response to the Request to Staff, whichever is later. *Id*. § V(A)(1). The grievance is submitted to either the facility's Reviewing Authority or, if medical in nature, the Correctional Health Services Administrator ("CHSA"). *Id.* § V(B)(1). This level may be bypassed only if the grievance involves a sensitive topic concerning the Reviewing Authority or CHSA. *Id*. § VIII(A)(4).

The final level of the ODOC Grievance Process is the filing of a grievance appeal. If dissatisfied with the response to a grievance, the inmate may file a grievance appeal within fifteen days of the date of the response. *Id*. § VII(A), (B). The grievance appeal is submitted to the Administrative Review Authority ("ARA") or, if a medical grievance, the Chief Medical Officer ("CMO"). *Id*. § VII(B). The ruling of the ARA or CMO is final and concludes the administrative remedy procedures available through ODOC. *Id*. § VII(D)(1).

The ODOC Grievance Process includes mechanisms for prisoners to seek relief if they fail to receive a response from a Request to Staff or a grievance. If there has been no response to a Request to Staff "in 30 calendar days of submission," the inmate may file a grievance with the facility's Reviewing Authority on the ground of non-responsiveness. *Id.* § IV(C)(7). If there has been no response to a grievance within 30

6

days of its submission, the inmate may send a grievance to the ARA or the CMO on the ground of non-responsiveness. *Id.* § V(C)(4).

   3. The Oklahoma Department of Corrections' Access to Health Care Process

In addition to the Grievance Process outlined above, ODOC has adopted an Access to Health Care Process, OP-140117, through which prisoners in ODOC's custody are instructed on their health care options and opportunities to request health care services. *See* OP-140117 (eff. Nov. 28, 2012) (Pl.'s Aff. at 10-21). Pursuant to the ODOC Access to Health Care Process, a prisoner initiates a "sick call request" for services from a medical provider by submitting a "Request for Health Services" form to the facility's health services unit or medical host facility. *Id.* § III(C). Upon submission of a Request for Health Services, a review is conducted by or under the supervision of a registered nurse to determine if an emergency health care assessment is required or if there is a need for the prisoner to be referred to a medical provider. *See id.* § III(C)(6), (C)(7), I(1).

   4. Plaintiff's Efforts to Exhaust Administrative Remedies

Plaintiff undisputedly submitted several documents to LCF officials, purportedly utilizing the ODOC Grievance Process framework, that requested relief on the primary complaint underlying Plaintiff's Eighth Amendment claims—i.e., refusal of his requested prescription and treatment for eczema. *See* Compl. ¶¶ 16, 18-20; Pl.'s Aff. at 2-5; Defs.' MSJ at 4-5; S.R. Exs. 7-10 (Doc. Nos. 26-7 to 26-10). The relevant documents in the record and the undisputed material facts show that Plaintiff failed to exhaust his administrative remedies with respect to his constitutional claims, as outlined below.

On March 14, 2013, Plaintiff—dissatisfied with the care he had received through his prior requests for health services under the Access to Health Care Process—filed a Request to Staff requesting that his prescription for triamcinolone ointment be renewed. S.R. Ex. 7 (Doc. No. 26-7). The Request to Staff was returned on March 19, 2013, with the response written under the "DISPOSITION" heading: "Improperly submitted. Refer to OP 090124 prior to re-submission." *Id.* Plaintiff then grieved this response to the facility's CHSA, requesting that his triamcinolone ointment continue to be prescribed. S.R. Ex. 8 (Doc. No. 26-8) (Grievance No. 13-115). Plaintiff's Grievance was returned unanswered with the notation, apparently referring to the ODOC Access to Health Care Process: "Please write your request for your cream on an . . . offender request." *See* S.R. Ex. 9 (Doc. No. 26-9); OP-140117 § III(C)(1).

Plaintiff next appealed to the ARA, complaining that OP-090124 was not being followed in the handling of his Grievance. S.R. Ex. 10 (Doc. No. 26-10). The Medical Services Administrator ("MSA") agreed, stating in a letter dated April 30, 2013:

> Upon further investigation, it was concluded that you did submit your "Request to Staff" form dated March 14 in accordance with policy, OP-090124. Consequently, I have contacted the correctional health services administrator at your facility, Robert Pine, and instructed him to amend the original response that was initially affixed to the "Disposition" section of the form on March 19, 2013.
>
> Once you receive an amended response to your "Request to Staff" form, you may proceed with the grievance process, in accordance with OP-090124.

S.R. Ex. 11 (Doc. No. 26-11). Included in the Special Report is a copy of a memorandum sent by the MSA to CHSA Defendant Pine on that same date, requesting

8

that Defendant Pine amend the original Request to Staff response of March 19th and return the amended response to Plaintiff "within 10 working days of receipt of this notice." S.R. Ex. 12 (Doc. No. 26-12); *see* OP-090124 § VII(C).

It is undisputed that there is no record of Defendant Pine ever submitting an amended response to Plaintiff. *See* Johns Aff. ¶ 3. Plaintiff likewise contends that he did not receive any amended response. *See* Pl.'s Aff. at 5. It is undisputed that Plaintiff at no point grieved or appealed his failure to receive an amended response. *See* Johns Aff. ¶ 3; Pl.'s Resp. at 25.

There is also no contention or evidence in the record that Plaintiff, since receiving the MSA's letter of April 30, 2013, submitted any document to a staff member, CHSA, ARA, or otherwise, that would have advised prison officials of Defendant Pine's oversight. To the contrary, it would appear that Plaintiff's filing of this lawsuit in federal court, nearly six months after preliminary disposition of his Grievance Appeal, was the first notification made to Defendants that Plaintiff remained unsatisfied with the interim outcome of Grievance No. 13-115 and with LCF's provision of eczema treatment. *See* Compl. (filed Sept. 19, 2013); S.R. Ex. 5, Jan. 28, 2014 Aff. of Health Services Administrator Shirley Stouffer (Doc. No. 26-5) (attesting that Plaintiff "has not filed a request for health services since March 13, 2013").

    5. <u>Plaintiff's Failure to Properly Exhaust Administrative Remedies</u>

The mandatory administrative remedy exhaustion requirement, *see Jones*, 549 U.S. at 211, applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some

9

other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To properly exhaust administrative remedies, Plaintiff must "us[e] all steps that the agency holds out, and do[] so properly (so that the agency addresses the issues on the merits)." *See Ngo*, 548 U.S. at 83-84, 90 (internal quotation marks omitted). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim . . . ." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

Here, notwithstanding the LCF health services administrator's apparent failure to submit an amended response to Plaintiff's Request to Staff, there is no reasonable dispute that Plaintiff did not properly and adequately present his relevant grievance through the full process of administrative review, "in accordance with the applicable procedural rules." *See Ngo*, 548 U.S. at 88, 90; OP-090124 § VII(D)(1). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

As support for the requested entry of summary judgment, Defendants have submitted a sworn affidavit from the Executive Assistant to the LCF Warden, stating that the Special Report, which documents Plaintiff's informal and formal administrative requests for relief, is true and correct to the best of his knowledge and belief. *See* S.R. at 7 (Jan. 24, 2014 Verification by Bill Gibson); Fed. R. Civ. P. 56(c)(4). Defendants also have submitted a sworn affidavit from the Grievance and Appeals Coordinator at LCF, who states that she has examined Plaintiff's grievance records. *See* Johns Aff. ¶¶ 1-2. Ms. Johns attests that she could "find no record that Ford filed a[n] RTS advising that

said amended response was overdue and requesting said amended response." *See id.* ¶ 3; Fed. R. Civ. P. 56(c)(4).

Plaintiff does not dispute Defendants' account of events with respect to their affirmative defense, but he contends that his failure to exhaust should be excused because he was prevented from exhausting administrative remedies by the actions of prison officials—specifically, by Defendant Pine's failure to issue an amended response. *See* Pl.'s Resp. at 2, 25. It is true that "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). Here, however, Plaintiff has failed to demonstrate that prison officials hindered his ability to exhaust administrative remedies.

The ODOC Grievance Process provides a procedure for prisoners who do not receive a response to a Request to Staff to grieve that lack of response and requires that they do so. *See* OP-090124 § IV(C)(7). That procedure and requirement are reasonably construed as applying to the failure to receive an amended response. Section IV(C)(7) of the Grievance Process establishes that if a prisoner fails to receive a response to a Request to Staff within 30 days of submission, the prisoner may—and must, to continue to pursue the issue—file a grievance with the reviewing authority on the ground of non-responsiveness. *See id.* Section VII(C) provides that if the ARA returns an appeal for further investigation and an amended response, the submitting prisoner "will be notified" of the decision. *See id.* § VII(C)(1). Further, Section VII(C) provides an express deadline for the CHSA, as applicable in this case, to submit its amended response. *See*

*id.* § VII(C)(2). Section VII(C)(4) provides that the prisoner may appeal an amended response pursuant to the same guidelines and time frames as for an appeal of an initial response. *See id.* § VII(C)(4).[3] These provisions are reasonably interpreted as meaning that an amended response to a Request to Staff will be treated like an initial response for purposes of determining whether a prisoner has exhausted the remedies available under OP-090124. *Cf. Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (recognizing prison officials' ability to rely upon a "reasonable interpretation" of grievance requirements).

Here, Plaintiff was expressly notified that the underlying Request to Staff had been sent to CHSA Defendant Pine and that Defendant Pine had been asked to return an amended response to Plaintiff within 10 working days. S.R. Ex. 11; *see also* OP-090124 § VII(C)(2) (prescribing a 15-day deadline for an amended response to issue). In other words, Plaintiff was informed of the pertinent information that would support his submission of a grievance based on a lack of an amended response. Further, as noted above, the ODOC Grievance Process generally sets forth specific remedies for prisoners if they fail to receive a response to a Request to Staff or a grievance. *See* OP-090124 §§ IV(C)(7), V(C)(4). These remedies are not limited by their terms only to *initial* responses. *Id.*

---

[3] Further, the ODOC Grievance Process also provides a mechanism for prisoners to seek relief if they fail to receive a response to a grievance within 30 days of its submission—by sending a grievance to the ARA or the CMO on the ground of non-responsiveness. *See* OP-090124 § V(C)(4).

A prisoner is entitled to appeal an amended response pursuant to the same guidelines and timeframes as applicable to an appeal of an initial response. *See* OP-090124 § VII(C)(4). It logically follows that a prisoner is entitled—and obligated—to exercise available remedies and alert prison officials to any lack of receipt of an amended response in the same fashion as with a lacking initial response, so as to ensure that all underlying steps are taken to permit later appeal of the grievance. These remedial opportunities simply reflect the reality that prison officials are dealing with a high volume of complaints at all times, and a prisoner may not simply sit in wait without undertaking minimal, reasonable efforts to alert prison officials of his or her particular dissatisfaction or a failure to receive an expected document. *Cf. Thomas*, 609 F.3d at 1118 ("[Plaintiff] may not successfully argue that he had exhausted his administrative remedies by, in essence, failing to employ them." (internal quotation marks omitted)).

A pro se litigant's pleadings are liberally construed and "held to a less stringent standard" than those drafted by attorneys. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). This liberal construction, however, does not relieve Plaintiff from carrying his burden in opposing a motion for summary judgment. Having reviewed both parties' submissions, Plaintiff's verified filings and supporting documents are insufficient to "demonstrate with specificity the existence of a disputed material fact." *See Hutchinson*, 105 F.3d at 564; Fed. R. Civ. P. 56(a), (c)(1), (c)(4). The undisputed material facts show that Plaintiff did not properly submit a grievance as to the lack of an amended response, and ultimately did not properly submit a grievance appeal to the ARA arising from that presumptive amended response, as required to complete the ODOC Grievance Process.

*See Ngo*, 548 U.S. at 90; *cf. Jackson v. Workman*, 391 F. App'x 724, 725 (10th Cir. 2010) (holding that plaintiff failed to exhaust administrative remedies when he had not filed administrative appeal). Substantial compliance with ODOC's "'deadlines and other critical procedural rules'" is not sufficient under the PLRA. *Craft v. Null*, 543 F. App'x 778, 779 (10th Cir. 2013) (quoting *Ngo*, 548 U.S. at 90); *Jernigan*, 304 F.3d at 1032. Further, a plaintiff's disagreement as to the appropriateness of a particular procedure does not excuse the plaintiff's obligation to comply with the available process. *See Thomas*, 609 F.3d at 1119.

None of the evidence in the record, even when construed in favor of Plaintiff, creates a genuine question of fact that would prevent the conclusion that Plaintiff did *not* exhaust his administrative remedies prior to commencing his Eighth Amendment claims against Defendants. "[E]xhaustion is mandatory under the PLRA[,] and . . . unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. Accordingly, the undersigned finds that Defendants' affirmative defense of nonexhaustion of administrative remedies is established as a matter of law, and, therefore, summary judgment should be entered in favor of Defendants on Plaintiff's constitutional claims against them.[4]

---

[4] In light of this recommendation, the undersigned need not address Defendants' alternative arguments in support of summary judgment.

*B. Whether the Court Should Exercise Supplemental Jurisdiction over Plaintiff's State-Law Claim*

Having found that Plaintiff's Complaint alleges no viable federal claim, and because diversity jurisdiction is neither alleged nor established, the undersigned further recommends that the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law negligence claim. *See* 28 U.S.C. §§ 1331, 1332, 1367(c)(3); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."); Compl. at 1; Pl.'s Resp. at 19-24.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Defendants' Motion for Summary Judgment (Doc. No. 28) be GRANTED. The undersigned further recommends that the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law negligence claim.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by August 29, 2014, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 8th day of August, 2014.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE