# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ERIC J. FORD,                      )
                                   )
    Plaintiff,            )
                                   )
v.                                 )          Case No. CIV-13-1013-R
                                   )
GEO GROUP INC. et al.,             )
                                   )
    Defendants.           )

## REPORT AND RECOMMENDATION

    Plaintiff Eric J. Ford, a state prisoner appearing pro se, brings this action under 42 U.S.C. § 1983, alleging violations of his Eighth Amendment rights under the United States Constitution. This matter has been referred by United States District Judge David L. Russell to the undersigned Magistrate Judge for initial proceedings in accordance with 28 U.S.C. § 636.

    Defendants GEO Group Inc. ("GEO"), H.A. Rios Jr., and Robert Pine (collectively, "Defendants") have moved for summary judgment on Plaintiff's constitutional claims, and Plaintiff has submitted a brief and a sworn affidavit in response. *See* Defs.' Am. Mot. Summ. J. (Doc. No. 49); Pl.'s Resp. (Doc. No. 58); Pl.'s Aff., Jan. 26, 2015 (Doc. No. 57). Defendants additionally have filed a Special Report, as well as a Supplemental Special Report, in accordance with the Court's Orders (Doc. Nos. 8, 47) and *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). S.R. (Doc. No. 26); Suppl. S.R. (Doc. No. 48).

Having considered the arguments, pleadings, and evidentiary materials presented by the parties, the undersigned recommends that summary judgment be granted in favor of Defendants on Plaintiff's constitutional claims and that Plaintiff's pending motions be denied.

## PROCEDURAL BACKGROUND

Plaintiff filed this lawsuit in September 2013, alleging claims arising out of events occurring at Lawton Correctional Facility in Lawton, Oklahoma, primarily in March and April 2013. *See* Compl. (Doc. No. 1) ¶¶ 2, 11-28. Defendants moved for summary judgment, arguing in part that Plaintiff had failed to exhaust his administrative remedies prior to bringing this lawsuit as required by the Prison Litigation Reform Act, codified in relevant part at 42 U.S.C. § 1997e(a). *See* Defs.' Mot. Summ. J. (Doc. No. 28). Upon de novo review of the undersigned's Report and Recommendation, the Court concluded that Plaintiff is excused from exhausting his administrative remedies and re-referred the matter to the undersigned. *See* First R. & R. (Doc. No. 38); Order of Sept. 30, 2014 (Doc. No. 44).

Prior to issuance of the September 30, 2014 Order, Plaintiff had filed an Amended Complaint (Doc. No. 40). Upon re-referral, the undersigned accepted the Amended Complaint and directed Defendants to respond and, as necessary, to supplement the Special Report. *See* Doc. No. 45, 47; *see also* Doc. No. 50 at 1.[1] Defendants filed an

---

[1] References to filings in this Court use the page numbers assigned by the Court's electronic filing system.

Answer (Doc. No. 52), a Supplemental Special Report (Doc. No. 48), and an Amended

Motion for Summary Judgment (Doc. No. 49).

## STANDARD OF REVIEW

Summary judgment is a means of testing in advance of trial whether the available

evidence would permit a reasonable jury to find in favor of the party asserting a claim.

The Court must grant summary judgment when "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). When considering a motion for summary judgment, the Court views the evidence

and the inferences drawn from the record in the light most favorable to the nonmoving

party. *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255

(10th Cir. 2005).

A party that moves for summary judgment has the burden of showing that the

undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, the nonmovant

need not convince the Court that it will prevail at trial, but it must cite sufficient evidence

admissible at trial to allow a reasonable jury to find in the nonmovant's favor, i.e., to

show that there is a question of material fact that must be resolved by the jury. *See*

*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Parties may establish the

existence or nonexistence of a material disputed fact through:

- citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" in the record; or

- demonstration "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B).

In assessing Defendants' Amended Motion for Summary Judgment, the undersigned considers the factual allegations of Plaintiff's sworn Amended Complaint, and those of the verified Special Report and Supplemental Special Report, as affidavit evidence for summary judgment purposes, to the extent facts are alleged therein based on personal knowledge. *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991); Fed. R. Civ. P. 56(c)(4); Am. Compl. at 7; S.R. at 7; Supp. S.R. at 6. While the Court construes a pro se litigant's pleadings liberally, all parties are held to the applicable rules of procedure. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

## FACTUAL BACKGROUND

For purposes of consideration of Defendants' Amended Motion for Summary Judgment, the relevant facts are as follows.[2] Lawton Correctional Facility ("LCF") is a private prison owned and operated by Defendant GEO, which is under contract with the Oklahoma Department of Corrections ("ODOC") to house Oklahoma inmates. Am. Compl. (Doc. No. 40) at 1; Answ. (Doc. No. 52) ¶ 2; Defs.' Am. Mot. Summ. J. (Doc. No. 49, at 2) ¶ 2;[3] Pl.'s Resp. (Doc. No. 58) at 2. Plaintiff was incarcerated at LCF at all

---

[2] All material facts relied upon in this Report and Recommendation are uncontroverted, deemed admitted, or, where genuinely disputed, identified as such and viewed in the light most favorable to Plaintiff.

[3] References to the material facts alleged to be undisputed in Defendants' Amended Motion for Summary Judgment are given as "Defs.' Material Facts ¶ _."

times relevant to this lawsuit. Defs.' Material Facts ¶ 1; Pl.'s Resp. at 2. Defendant Rios, as LCF Warden, and Defendant Pine, as LCF Correctional Health Services Administrator ("CHSA"), were employed by Defendant GEO and worked at LCF at all times relevant to this lawsuit. Am. Compl. at 2, 3; Answ. at 1; Defs.' Material Facts ¶ 3. Defendants Rios and Pine are sued in their individual capacities. Am. Compl. at 2, 3.

In September 2009, Plaintiff received a prescription for triamcinolone 0.1% cream for treatment of his atopic dermatitis (which Plaintiff also identifies as "eczema"), to be used three times a day. Am. Compl. at 2; Pl.'s Aff. (Doc. No. 57) ¶ 2; Pl.'s Aff. Ex. 1 (Doc. No. 57-1). On January 22, 2013, Plaintiff submitted a written Request for Health Services to LCF's medical department stating that his prescription for the triamcinolone ointment had expired and should be renewed. Pl.'s Aff. ¶ 3; Pl.'s Aff. Ex. 2 (Ex. 57-2). An LCF staff member scheduled a clinic appointment for Plaintiff to be seen by medical personnel regarding renewal of the prescription. Pl.'s Aff. ¶ 4; Pl.'s Aff. Ex. 2. Plaintiff alleges that he was seen by Dr. Kent King in January 2013 and was told that his triamcinolone prescription would be refilled. Pl.'s Aff. ¶ 5. Plaintiff alleges that he did not receive any triamcinolone thereafter. Pl.'s Aff. ¶ 5. Defendants assert that "according to the medical records Mr. Ford was given a 60 day prescription for medication for his skin condition in January 2013." S.R. Ex. 5, First Stouffer Aff. ¶ 3, Jan. 28, 2014 (Doc. No. 26-5).

On March 6, 2013, Plaintiff submitted a two-word Request for Health Services to LCF's medical department: "skin problem." Pl.'s Aff. ¶ 6; Pl.'s Aff. Ex. 3 (Doc. No. 57-

3); S.R. at 4.  A licensed practical nurse, LPN Wood, responded on that same date, "Already under MD care with Rx for Triamcinolone."  Pl.'s Aff. Ex. 3; S.R. at 4.

On March 12, 2013, Plaintiff again submitted a Request for Health Services on the basis of "skin problem."  Pl.'s Aff. ¶ 8; Pl.'s Aff. Ex. 4 (Doc. No. 57-4); S.R. at 4. Plaintiff was then scheduled for a Nurse Sick Call III appointment regarding his skin problem.  Pl.'s Aff. Ex. 4; S.R. at 4.  On March 13, 2013, Plaintiff was seen by LPN Wood.  Pl.'s Aff. ¶ 9; Am. Compl. at 9; S.R. at 4.  Plaintiff told LPN Wood that he needed to see a doctor because he had not received the triamcinolone ointment for his eczema.  Am. Compl. at 9.  LPN Wood asked Plaintiff, "Show me where your skin problem is, is it in your crotch area?  If so, I'll have to take you to medical."  Am. Compl. at 9.  Plaintiff said, "No."  Am. Compl. at 9; S.R. at 4; S.R. Ex. 4 (Doc. No. 26-4).  LPN Wood twice more asked Plaintiff to show her the affected area, and Plaintiff again refused, saying he was not refusing treatment but also stating: "I only need to see the doctor to get my triamcinolone."  Am. Compl. at 9.  LPN Wood construed Plaintiff's response as a refusal of treatment.  Am. Compl. at 9; S.R. at 4; S.R. Ex. 4 (LPN Wood stating that Plaintiff "[r]efused to show skin condition or do cellside visit").  Plaintiff refused to sign LPN Wood's written "Waiver of Treatment/Evaluation" form regarding the visit of March 13, 2013.  S.R. at 4; S.R. Ex. 4.

Defendants assert that "Plaintiff has not made a request for medical treatment of his skin condition" "since March 13, 2013."  *See* Defs.' Material Facts ¶ 6.  Defendants are correct that since this date, Plaintiff has not submitted a request in the form of a written "Request for Health Services," which is a proper method for seeking medical

treatment under ODOC's Access to Health Care Process, OP-140117. *See* First R. & R. at 7; OP-140117 (eff. Nov. 28, 2012), Pl.'s Aff. in Support of Compl. (Doc. No. 32) at 10-21. As previously described, however, Plaintiff has submitted a request for triamcinolone ointment since that date through the separate administrative grievance process:

> On March 14, 2013, Plaintiff—dissatisfied with the care he had received through his prior requests for health services under the Access to Health Care Process—filed a Request to Staff requesting that his prescription for triamcinolone ointment be renewed. S.R. Ex. 7 (Doc. No. 26-7). The Request to Staff was returned on March 19, 2013, with the response written under the "DISPOSITION" heading: "Improperly submitted. Refer to OP 090124 prior to re-submission." *Id.* Plaintiff then grieved this response to the facility's CHSA, requesting that his triamcinolone ointment continue to be prescribed. S.R. Ex. 8 (Doc. No. 26-8) (Grievance No. 13-115). Plaintiff's Grievance was returned unanswered with the notation, apparently referring to the ODOC Access to Health Care Process: "Please write your request for your cream on an . . . offender request." *See* S.R. Ex. 9 (Doc. No. 26-9); OP-140117 § III(C)(1).

> Plaintiff next appealed to the ARA, complaining that OP-090124 was not being followed in the handling of his Grievance. S.R. Ex. 10 (Doc. No. 26-10). The Medical Services Administrator ("MSA") agreed, stating in a letter dated April 30, 2013:

>> Upon further investigation, it was concluded that you did submit your "Request to Staff" form dated March 14 in accordance with policy, OP-090124. Consequently, I have contacted the correctional health services administrator at your facility, Robert Pine, and instructed him to amend the original response that was initially affixed to the "Disposition" section of the form on March 19, 2013.

>> Once you receive an amended response to your "Request to Staff" form, you may proceed with the grievance process, in accordance with OP-090124.

S.R. Ex. 11 (Doc. No. 26-11). Included in the Special Report is a copy of a memorandum sent by the MSA to CHSA Defendant Pine on that same date, requesting that Defendant Pine amend the original Request to Staff response of March 19th and return the amended response to Plaintiff

"within 10 working days of receipt of this notice." S.R. Ex. 12 (Doc. No. 26-12); *see* OP-090124 § VII(C).

It is undisputed that there is no record of Defendant Pine ever submitting an amended response to Plaintiff. *See* Johns Aff. [S.R. Ex. 13 (Doc. No. 26-13)] ¶ 3. Plaintiff likewise contends that he did not receive any amended response. *See* Pl.'s Aff. [in Support of Compl.] at 5. It is undisputed that Plaintiff at no point grieved or appealed his failure to receive an amended response. *See* Johns Aff. ¶ 3; Pl.'s Resp. [to Defs.' First Mot. Summ. J. (Doc. No. 33)] at 25.

There is also no contention or evidence in the record that Plaintiff, since receiving the MSA's letter of April 30, 2013, submitted any document to a staff member, CHSA, ARA, or otherwise, that would have advised prison officials of Defendant Pine's oversight.

First R. & R. at 8-9; *see also* S.R. at 5-6; Supp. S.R. Ex. 3, Second Stouffer Aff. ¶ 4, Nov. 25, 2014 (Doc. No. 48-3); Am. Compl. at 4, 11-12; Pl.'s Aff. ¶¶ 10-16; Pl.'s Aff. Exs. 6, 7, 8, 9 (Doc. Nos. 57-6, 57-7, 57-8, 57-9). *See generally* ODOC Offender Grievance Process, OP-090124 (eff. Jan. 29, 2013), Pl.'s Aff. in Support of Compl. at 26-50; OP-140117, Pl.'s Aff. in Supp. of Compl. at 10-21.

On September 3, 2014, LCF medical personnel reported that Plaintiff refused to be seen on a "Chronic Care Visit" regarding his atopic dermatitis and asthma. Defs.' Am. Mot. Summ. J. at 8; Supp. S.R. at 3; Supp. S.R. Ex. 4, Exam Refusal of Sept. 3, 2014 (Doc. No. 48-4, at 1). In issuing a written report on that date, Charles Sorenson, MD, stated: "Mr. Ford has refused to talk to me or submit to physical examination because 'I am involved in a lawsuit with GEO and I would rather not discuss anything with you[.'] He stated his lawsuit involves GEO, the Warden, and the medical staff involved with his 'inadequate care[.']" Exam Refusal of Sept. 3, 2014, at 1. Plaintiff signed his name to a written waiver of his Chronic Care Visit on September 23, 2014, but also wrote:

"Pending Lawsuit (Not Refusing)."  Supp. S.R. Ex. 4, Waiver of Chronic Care Visit (Doc. No. 48-4, at 2-3).

## ANALYSIS

I.  *Whether Defendants Are Entitled to Summary Judgment on Plaintiff's Eighth Amendment Claims*

Liberally construed, Plaintiff raises three counts of violations of his Eighth Amendment rights.  First, Plaintiff asserts that Defendant Rios failed to carry out his responsibilities to ensure the adequate delivery of medical services to Plaintiff.  Am. Compl. at 4, 8-10; Pl.'s Resp. at 2, 4-13.  Second, Plaintiff asserts that Defendant GEO engages in a custom of impeding Plaintiff's access to health care.  Am. Compl at 4, 11-12.  And third, Plaintiff asserts that Defendant Pine's failure to respond to Plaintiff's medical complaints constitutes deliberate indifference to Plaintiff's serious medical needs.  Am. Compl. at 5, 13; Pl.'s Resp. at 13-14.  Plaintiff seeks monetary damages from all three Defendants.  Am. Compl. at 6.

A. Standard: Deliberate Indifference

To prevail on an Eighth Amendment claim under 42 U.S.C. § 1983, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994).  In *Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005), the Tenth Circuit Court of Appeals provided a thorough summary of the law applicable to such claims:

A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against

cruel and unusual punishment. The test for constitutional liability of prison officials "involves both an objective and a subjective component."

The prisoner must first produce objective evidence that the deprivation at issue was in fact "sufficiently serious." We have said that a "medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim. Moreover, a delay in medical care "only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain."

The subjective prong of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind. The subjective component is satisfied if the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." A prison medical professional who serves "solely . . . as a gatekeeper for other medical personnel capable of treating the condition" may be held liable under the deliberate indifference standard if she "delays or refuses to fulfill that gatekeeper role."

*Id.* at 751 (alteration in original) (citations omitted).

B. Count One: Defendant Rios

In his first claim, Plaintiff points to the events transpiring between January and March 2013 to support his allegation that Defendant Rios, as then-Warden of LCF, violated the Eighth Amendment by failing "to properly hire, train, supervise, direct or control the actions of subordinates (Dr. King, and Nurse Wood) who caused Plaintiff's suffering" and therefore "acted, with deliberate indifference, towards Plaintiff's serious medical needs." Am. Compl. at 9-10; Pl.'s Resp. at 8-9.

When a defendant such as Defendant Rios is sued in his individual capacity under § 1983, the plaintiff must establish the defendant's "personal involvement or participation" in the alleged violation of a federal right. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996); *see also Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). The plaintiff must also establish a causal connection between the acts of that particular defendant and the alleged violation of a federal right. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Pahls v. Thomas*, 718 F.3d 1210, 1225-26, 1228 (10th Cir. 2013). Finally, the plaintiff must establish that the defendant acted with the state of mind required for the alleged underlying federal rights violation. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986). These requirements also apply when a supervisor is alleged to be responsible for the misconduct of a subordinate, as a § 1983 claim against a supervisor may not be premised on vicarious liability. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767-69 (10th Cir. 2013); *Iqbal*, 556 U.S. at 676-77. For example, § 1983

> allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution . . . ." (quoting 42 U.S.C. § 1983). A plaintiff may therefore succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.

*Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (citation omitted); *see also Schneider*, 717 F.3d at 767.

As required by these authorities, Plaintiff has not stated factual allegations or offered any evidence to show that Defendant Rios personally participated in or is causally connected to any deprivation of a federal right with respect to Plaintiff's medical treatment for atopic dermatitis. As an initial matter, it is not contended, and has not been shown, that Defendant Rios attended, or was even personally aware of, Plaintiff's visits with Dr. King and LPN Wood in January 2013 and March 2013, respectively. *See* Am. Compl. at 4, 8-10; Pl.'s Aff. ¶¶ 3-9, 17; Pl.'s Resp. at 4-13.

Next, Plaintiff offers no evidence specifically refuting Defendant Rios' contention that he "does not directly supervise medical care of inmates." Defs.' Material Facts ¶ 7; Supp. S.R. at 3 ("While Warden Rios maintains general supervision of security and administrative aspects of the medical unit within the prison, decisions regarding provision of the medical treatment are solely within the discretion of the medical personnel."); Supp. S.R. Ex. 2 (Doc. No. 48-2). Instead, Plaintiff points only to (i) the contract between ODOC and Defendant GEO, pursuant to which Defendant GEO "will provide medical . . . health care services delivered by licensed health care staff overseen by a health administrator"; and (ii) an Oklahoma statute prescribing that contracts between ODOC and private prisons shall require private prison operators to furnish medical care for inmates. Pl.'s Resp. at 12-13; Pl.'s Aff. ¶ 17; Pl.'s Aff. Ex. 10, ODOC-GEO LCF Contract App. B (Doc. No. 57-10) at 1; Okla. Stat. tit. 57, § 561.3. Neither this contract nor the cited statutory provision establishes a genuine fact issue as to whether Defendant Rios had any "personal involvement" in or "causation" of the alleged constitutional deprivations with respect to Plaintiff's treatment by Dr. King and LPN Wood. *See*

*Schneider*, 717 F.3d at 767. Nor does Plaintiff's general conclusion that Defendant GEO had a contractual and statutory duty to provide care in accordance with prescribed standards sufficiently establish a genuine issue as to whether Defendant Rios himself "promulgated, created, implemented or possessed responsibility for the continued operation of a policy" that "caused the complained of constitutional harm." *See Dodds*, 614 F.3d at 1199.

Even assuming that Defendant Rios had some knowledge of the alleged violations of Plaintiff's rights—an assumption not reflected in the record—Plaintiff fails to show the requisite "affirmative link" between the relevant medical personnel and Defendant Rios' actions. *See Schneider*, 717 F.3d at 767 (noting that a plaintiff's showing of an affirmative link requires "'more than a supervisor's mere knowledge of his subordinate's' conduct" (quoting *Iqbal*, 556 U.S. at 677)); *Dodds*, 614 F.3d at 1198 (noting that a plaintiff must eventually prove that a supervising defendant violated the Constitution "by virtue of his own conduct" (citing *Iqbal*, 556 U.S. at 677)). Nor has Plaintiff offered evidence from which it reasonably could be concluded that Defendant Rios himself acted with a culpable state of mind and knowledge of a substantial risk of *serious* harm, as required to prove the subjective component of an Eighth Amendment violation. *See Dodds*, 614 F.3d at 1198; *Mata*, 427 F.3d at 751.

The evidentiary material submitted by the parties, even when viewed most favorably to Plaintiff, forecloses the existence of a genuine issue of material fact as to whether Defendant Rios was deliberately indifferent to Plaintiff's serious medical needs or was involved in any violation of Plaintiff's Eighth Amendment rights. *See Schneider*,

717 F.3d at 767-68; *cf. Richardson v. Romer*, No. 91-1410, 1992 WL 73048, at *1 (10th Cir. Apr. 9, 1992) (holding that allegation that defendants "should have known what was occurring in the prison system" was insufficient to state a claim for relief under § 1983). Summary judgment should be granted to Defendant Rios on Count One.

C. <u>Count Two: Defendant GEO</u>

A private actor such as Defendant GEO cannot be held liable under § 1983 solely based on the actions of its employees. *Smedley v. Corr. Corp. of Am.*, 175 F. App'x 943, 946 (10th Cir. 2005) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978)); *see also Phillips v. Tiona*, 508 F. App'x 737, 750 (10th Cir. 2013) (collecting § 1983 cases involving private prisons such as those operated by Defendant GEO); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (applying municipal direct-liability standard in § 1983 suit against private entity acting under color of state law and discussing inapplicability of vicarious liability). To establish Defendant GEO's liability under § 1983, Plaintiff must establish three basic elements: (1) an official policy or custom of Defendant GEO; (2) caused a violation of Plaintiff's federal right(s); and (3) "was enacted or maintained with deliberate indifference to an almost inevitable" federal right(s) violation. *See Schneider*, 717 F.3d at 769-71. More specifically as to the second element, Plaintiff must allege facts to establish that the referenced policy or custom either directly violated Plaintiff's federal right(s) or was the "moving force" behind an employee's violation of Plaintiff's federal right(s). *See id.* at 769, 770.

Plaintiff asserts that Defendant GEO engages in a "custom" of impeding Plaintiff's access to medical care for his atopic dermatitis. Am. Compl at 4, 11-12.

Liberally construed, Plaintiff argues that he was denied adequate medical care because (i) in March 2013, he was seen by LPN Wood, rather than by a doctor as he wished to be; and (ii) he has not received an additional supply of triamcinolone ointment after the initial prescription or its refill expired, despite submitting multiple requests. Am. Compl. at 4, 8-9, 11-12; Pl.'s Resp. at 9-12.

### 1. LPN Wood

With respect to the first alleged instance of unconstitutional conduct, Plaintiff argues that LPN Wood "denied Plaintiff access to a doctor who could renew a prescription for triamcinolone." Am. Compl. at 8, 9. Plaintiff admits that on March 13, 2013, he declined to show LPN Wood (who is not a Defendant in this lawsuit) the affected area of his skin because Plaintiff wished to see a doctor instead. Am. Compl. at 9; *see* S.R. Ex. 4. According to Plaintiff, his action was not a refusal of medical treatment because LPN Wood "is neither qualified nor li[c]en[s]ed to provide Plaintiff treatment for his eczema." Am. Compl. at 9; *see also* Pl.'s Aff. ¶ 9 (stating that LPN Wood "intentionally denied me access to medical care or treatment").

These undisputed facts reflect that Plaintiff was offered medical treatment for his atopic dermatitis by a nurse but declined that treatment because he preferred to be seen by a doctor. Plaintiff provides no evidence to support his allegation that LPN Wood was not qualified or licensed to treat Plaintiff's eczema condition. *See* Am. Compl. at 9. To the extent that Plaintiff is challenging the facility's apparent practice of generally requiring a prisoner to be first evaluated by a nurse, the Tenth Circuit has explained that

"there is no *per se* requirement that a jail provide its inmates around-the-clock access to a medical doctor." *Boyett v. Cnty. of Washington*, 282 F. App'x 667, 673 (10th Cir. 2008).

> While jailers are ultimately responsible for their inmates' medical needs, *Farmer*[, 511 U.S. at 833-34], they can provide that care in a variety of ways, including access to trained personnel such as guards in the first instance, nurses, and physicians' assistants. The Eighth Amendment requires nothing more as a general matter. While access to a medical doctor may be necessary in certain situations, no constitutional violation occurs unless medical care is intentionally or recklessly denied.

*Id.* (citations omitted). There is no evidence Plaintiff could not have obtained adequate care, or, ultimately, a triamcinolone prescription, through the channel offered. The alleged failure to provide Plaintiff the precise treatment he desired, in the precise manner he desired it—i.e., without adherence to the requirement of an initial exam by a nurse—is not an instance of deliberate indifference to Plaintiff's serious medical needs. *Cf. Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) ("Plaintiff's . . . contention that he was denied treatment by a specialist is . . . insufficient to establish a constitutional violation.").

Further, because Plaintiff declined to show or further describe his "skin problem" to LPN Wood, it cannot reasonably be inferred that LPN Wood knew of any serious risk to Plaintiff's health in connection with that skin problem such that LPN Wood could then be said to have disregarded such a risk by terminating the medical encounter. Accordingly, Plaintiff cannot establish the subjective component of an Eighth Amendment violation in LPN Wood's actions. *See, e.g.*, *Mata*, 427 F.3d at 751.

## 2. Triamcinolone Prescription

With respect to the second alleged incident of unconstitutional conduct, Plaintiff complains that due to the denial of triamcinolone ointment, he experiences "eczema flareups" that cause him "to scratch in affected areas" of his body, which "often on occas[]ions" breaks the skin and "which create[] a burning sensation" that "has caused scarring [of] over 40%" of his body. Pl.'s Aff. ¶ 19. For the purpose of deciding Defendants' motion for summary judgment, the undersigned assumes that the alleged delay or denial of triamcinolone "resulted in substantial harm"—e.g., "lifelong handicap, permanent loss, or considerable pain"—as required for Plaintiff to establish the objective component of an Eighth Amendment violation. *See Mata*, 427 F.3d at 751 (internal quotation marks omitted); *see also Farmer*, 511 U.S. at 834.

As noted above, however, Plaintiff sought and was offered medical attention for his skin condition in March 2013, but he declined the available treatment because the provider was a nurse rather than a doctor. *See supra* Part I.C.1. Plaintiff made additional requests for treatment through the prison grievance process but described his condition only in general terms ("serious skin condition"). *See, e.g.*, Pl.'s Aff. Ex. 5 (Doc. No. 57-5; Pl.'s Aff. Ex. 6 (Doc. No. 57-6). Then, on September 3, 2014, when Dr. Charles Sorenson attempted to conduct a Chronic Care Visit with Plaintiff, he declined to talk to Dr. Sorenson or to submit to a physical examination. Supp. S.R. at 3; Exam Refusal of Sept. 3, 2014.

Because they were not presented with Plaintiff's specific symptoms, it cannot reasonably be inferred from the summary judgment record that GEO employees involved

in the above-noted grievance process or Dr. Sorenson recklessly disregarded a serious risk to Plaintiff's health in declining to provide the requested prescription medication. Accordingly, Plaintiff cannot establish the subjective component of an Eighth Amendment violation in Dr. Sorenson's or the other GEO employees' actions. *See, e.g.*, *Mata*, 427 F.3d at 751.

Further, consistent with the discussion above, the visit by Dr. Sorenson was an instance in which medical care was made available to Plaintiff and he refused. Plaintiff attempts to raise a genuine dispute regarding his Chronic Care Visit by suggesting that it was only made on the basis of Plaintiff's asthma, rather than his skin condition, but Dr. Sorenson's documentation of the attempted visit plainly states both "[a]topic dermatitis and related conditions" and asthma were the relevant "[p]roblems." *Compare* Pl.'s Aff. ¶ 18, *with* Exam Refusal of Sept. 3, 2014. Plaintiff signed his name to a written waiver of the Chronic Care Visit, but also wrote: "Pending Lawsuit (Not Refusing)." Waiver of Chronic Care Visit at 2; Pl.'s Aff. ¶ 18. Plaintiff's reference to this lawsuit, which is premised upon treatment of his skin condition, contradicts any later suggestion that Dr. Sorenson's offer of treatment was limited to asthma. Plaintiff has not contended that Dr. Sorenson's form is "altered in any way." *See Scott v. Harris*, 550 U.S. 372, 378 (2007). Plaintiff's self-serving statement that the Chronic Care Visit involved only asthma is insufficient, in the face of contemporaneous records, to create a genuine dispute of fact regarding his refusal of medical care by Dr. Sorenson. *See id.* at 380. With respect to Plaintiff's statement that there was pending litigation, Plaintiff's action—regardless of

the reason given—was a refusal of available care, inconsistent with an allegation that Defendants were deliberately indifferent to Plaintiff's serious medical needs.

### 3. Liability of Defendant GEO

The undisputed facts, even upon assuming all reasonable inferences in favor of Plaintiff, do not establish any official custom by Defendant GEO relevant to the denial of triamcinolone to Plaintiff or the denial of access to proper medical care, beyond the legitimate requirement that Plaintiff be examined by the prison's designated medical personnel before a prescription would be renewed. *See Boyett*, 282 F. App'x at 673; *Schneider*, 717 F.3d at 770 ("A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision."). Moreover, because Plaintiff has not established an underlying violation of his federal rights by Defendant GEO's employees, Plaintiff cannot establish that an alleged custom attributable to Defendant GEO and used by those employees caused or was a "moving force" behind a violation of Plaintiff's rights, as required to establish Defendant GEO's liability under § 1983. *See id.* Plaintiff has not demonstrated the existence of a genuine issue for trial as to this issue. Accordingly, Defendant GEO is entitled to summary judgment on Count Two.

### D. Count Three: Defendant Pine

In his third claim, Plaintiff relies upon the same factual allegations as those outlined above to assert that Defendant Pine's failure to investigate or review Plaintiff's medical complaint of March 14, 2013, violated Plaintiff's Eighth Amendment rights.

Am. Compl. at 5, 13; Pl.'s Resp. at 13-14. More specifically, Plaintiff argues that Defendant Pine's failure to return an amended response to Plaintiff's Request to Staff of March 14, 2013, and concomitant halt to Plaintiff's administrative grievance efforts, constitute deliberate indifference to Plaintiff's serious medical needs. Pl.'s Resp. at 13-14; Pl.'s Aff. ¶ 16.

As noted above, it is undisputed that Defendant Pine, as LCF Correctional Health Services Administrator, did not return an amended response to Plaintiff's Request to Staff, despite having been instructed to do so by the Medical Services Administrator. First R. & R. at 8-9; S.R. Exs. 11, 12; Johns Aff. ¶ 3; Pl.'s Aff. ¶ 16. The resulting question then is whether the available evidence, as presented in the parties' summary judgment materials, would permit a reasonable conclusion that this omission by Defendant Pine constituted a knowing and deliberate disregard for Plaintiff's serious medical needs. *See Gee*, 627 F.3d at 1192 ("An Eighth Amendment violation requires both a sufficiently serious medical need and deliberate indifference by the health-care provider." (citing *Gamble*, 429 U.S. at 106)). Defendant Pine asserts that there is no evidence that would support such a conclusion. *See* Defs.' Am. Mot. Summ. J. at 4-6.

In the Request to Staff upon which Plaintiff's claim is predicated, Plaintiff stated:

> During my recent medical visit and having examined my leg, Dr. King said that he would renew my prescription for triamcinolone ointment.
> I believe my prescription for triamcinolone ointment should be renewed.

S.R. Ex. 7. Plaintiff does not contend, nor present evidentiary materials to support, that he—after the Medical Service Administrator's instruction regarding an amended

response to the Request to Staff—raised the issue of an amended response with Defendant Pine or otherwise communicated any greater description of his skin condition to Defendant Pine. *See* Am. Compl. at 5, 6, 12; Pl.'s Aff. ¶ 16.

It cannot be reasonably inferred that Defendant Pine was made aware of "a substantial risk of serious harm" to Plaintiff based upon only this Request to Staff and the Medical Services Administrator's instruction for Defendant Pine to amend his original response. *See* S.R. Exs. 7, 12; *Farmer*, 511 U.S. at 837. Further, Plaintiff has offered no evidence that Defendant Pine's failure to offer an amended response to his Request to Staff was intentional, much less made with "the requisite culpable state of mind" to "rise to the level of a constitutional violation." *Boyett*, 282 F. App'x at 674 (citing *Farmer*, 511 U.S. at 835). Accordingly, Plaintiff has "failed to put forth evidence [Defendant Pine] knew of a substantial risk of serious harm, and consciously disregarded it." *Id.* at 675 (alteration and internal quotation marks omitted). Defendant Pine is entitled to summary judgment on Count Three.[4]

---

[4] Nor can Plaintiff show that Defendant Pine's omission violated any other of Plaintiff's constitutional rights—e.g., Plaintiff's right to due process under the Fourteenth Amendment. Because "[i]nmates do not have a protected liberty interest in pursuing formal grievance procedures," Plaintiff's allegation that proper grievance procedures were not adhered to cannot state a claim upon which relief plausibly can be granted under § 1983. *See Spry v. McKune*, 479 F. App'x 180, 181 (10th Cir. 2012); *Pemberton v. Jones*, No. CIV-10-966-D, 2011 WL 1598194, at *3 (W.D. Okla. Apr. 27, 2011). "When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011) (alteration and internal quotation marks omitted); *see Spry*, 479 F. App'x at 181 (affirming district court's dismissal of due process claim premised upon unavailability of administrative remedy for failure to state a

## II.     Whether the Court Should Exercise Supplemental Jurisdiction over Plaintiff's State-Law Claim

Plaintiff's Amended Complaint contains a bare reference to the supplemental jurisdiction statute, 28 U.S.C. § 1367(b), and to the "tort of negligence." Am. Compl. at 2. This reference is not reasonably construed as a stand-alone legal claim, and Defendants did not seek summary judgment on any state-law claim. *But see* Pl.'s Resp. at 15 (arguing that Defendants' violation of Title 71, Section 561.3 of the Oklahoma Statutes, which governs ODOC contracts with private prison operators, constitutes "negligence per se"). Assuming Plaintiff did adequately allege such a claim, because Defendants are entitled to summary judgment on Plaintiff's federal claims, and because diversity jurisdiction is neither alleged nor established, the undersigned recommends that the Court decline to exercise supplemental jurisdiction over any state-law negligence claim asserted by Plaintiff. *See* 28 U.S.C. §§ 1331, 1332, 1367(c)(3); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."); Am. Compl. at 2; Pl.'s Resp. at 15.

## III.    Plaintiff's Request to Amend His Pleading

After Plaintiff filed his first Amended Complaint, and Defendants filed their Answer and Amended Motion for Summary Judgment, Plaintiff filed a Motion for Leave to File Amended Complaint, with his proposed pleading attached (Doc. Nos. 54, 54-1).

---

claim upon which relief may be granted); *Pemberton*, 2011 WL 1598194, at *3 ("[P]rison grievance procedures do not create a protected liberty interest and do not implicate [a prisoner's] due process rights.").

In support of allowing further amendment, Plaintiff states that his prior pleading contained no facts showing Defendant Rios' personal participation in Count One, no facts showing direct actions of Defendant GEO in Count Two, and no facts showing Defendant Pine's personal participation in Count Three. Pl.'s Mot. Leave to Amend (Doc. No. 54) at 1-2. Plaintiff's proposed pleading sets forth no new claims but contains revisions and additional allegations on his prior claims. *See* Doc. No. 54-1. Plaintiff in his Motion provides no explanation for the delay and no basis for granting the request beyond his desire to "state[] facts showing personal involvement" of Defendants in violating Plaintiff's constitutional rights. Pl.'s Mot. Leave to Amend at 2.

Although a court "should freely give leave" to amend a pleading "when justice so requires," *see* Fed. R. Civ. P. 15(a)(2), the Tenth Circuit has recognized that "untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993) (citations omitted). "Furthermore, where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *Id.* at 1366 (alteration and internal quotation marks omitted). The timing of Plaintiff's Motion also implicates the recognition that a court may

> properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint "a moving target," to "salvage a lost case by untimely suggestion of new theories of recovery," to present "theories seriatim" in an effort to avoid dismissal, or to "knowingly delay raising an issue until the 'eve of trial.'"

*Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (alterations and citations omitted).

Here, Plaintiff's request to file a new complaint came over a year after his initial Complaint, and four months after his Amended Complaint, and is based on facts that were known to Plaintiff at the time of those prior pleadings. Moreover, permitting another amendment at this point in the proceedings would be unduly prejudicial for Defendants, who already have participated in discovery and submitted multiple filings based upon the allegations of Plaintiff's Amended Complaint. *See* Doc. Nos. 31, 48, 49, 52. These are sufficient grounds, by themselves, to deny Plaintiff's motion to amend.

Nevertheless, the undersigned has reviewed the additional allegations made by Plaintiff in his proposed second amended complaint. *See* Doc. No. 54-1. These allegations are materially identical to the statements made by Plaintiff in Plaintiff's Affidavit in Opposition to Defendants' Amended Motion for Summary Judgment, and consideration of these allegations would not affect the undersigned's recommendation herein. *Compare id.*, *with* Pl.'s Aff. (Doc. No. 57). In light of the recommended disposition of Plaintiff's claims on summary judgment, and because pleading of the facts stated in the proposed second amended complaint would not alter the undersigned's analysis, it is recommended that Plaintiff's Motion for Leave to File Amended Complaint (Doc. No. 54) be denied.

*IV. Plaintiff's Motion to Require Medical Care or Treatment*

Plaintiff also has filed a Motion to Require Medical Care or Treatment (Pl.'s Mot. Prelim. Inj. (Doc. No. 59)) with supporting affidavit (Doc. No. 61), to which Defendants have responded (Doc. No. 60). In his Motion, which is most reasonably viewed as a request for preliminary injunctive relief, Plaintiff requests "medical care or treatment for his Atopic Dermatitis as required by statute and directed by dermatology specialist"— that is, the provision of triamcinolone ointment three times a day. *See* Pl.'s Mot. Prelim. Inj. at 1-3.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). For entry of a preliminary injunction, the movant generally must satisfy four elements: (1) a substantial likelihood that he will prevail on the merits; (2) irreparable harm unless the restraining order is issued; (3) outweighing of the harm from the threatened injury against the adversary's harm from the preliminary injunction; and (4) the absence of an adverse impact on the public interest. *Kikumura v. Hurley,* 242 F.3d 950, 955 (10th Cir. 2001). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Id.* Although the Court will construe a pro se litigant's filings liberally, requests for relief must be supported, at a minimum, by factual allegations, which require no special legal training to provide. *See Hall*, 935 F.2d at 1110 & n.3 (stating rule of liberal construction "applies to all proceedings involving a pro se litigant"); Fed. R. Civ. P. 7(b)(1)(B) (requiring requests for a court order to "state with particularity the grounds for seeking

the order").

The undersigned has herein recommended the entry of summary judgment for Defendants on the merits of all of Plaintiff's Eighth Amendment claims. Plaintiff therefore cannot show "a substantial likelihood of success on the merits" with respect to his medical-treatment claims premised upon treatment of his skin condition, which are echoed in his request for preliminary injunctive relief. *See Kikumura*, 242 F.3d at 955; *Church v. Okla. Corr. Indus.*, No. CIV-10-1111-R, 2011 WL 4376222, at *13 (W.D. Okla. Aug. 15, 2011) (R. & R. of Couch, J.), *adopted*, 2011 WL 4383225 (W.D. Okla. Sept. 20, 2011), *and aff'd*, 459 F. App'x 806 (10th Cir. 2012). *See generally Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975) ("[The movant] must [establish his right to such relief] by clear proof that he will probably prevail when the merits are tried, so to this extent there is a relation between temporary and permanent relief.").

Even if Plaintiff could succeed on his constitutional claims, the assertions in his Motion do not justify the Court mandating specific medical treatment without adherence by Plaintiff to LCF's requirement that he first be examined by a nurse or doctor, such as the examinations refused by Plaintiff in the instances described in Part I.C, above. *See* Pl.'s Mot. Prelim. Inj. at 1-2. Granting the relief Plaintiff seeks would require this Court to intrude directly into the affairs of state prison administration, which for important policy reasons is a step courts should be reluctant to take. *See Turner v. Safley*, 482 U.S. 78, 84-86 (1987); *cf. Stephens v. Jones*, 494 F. App'x 906, 912 (10th Cir. 2012) (affirming denial of requested injunctive relief as "overbroad and more intrusive than necessary"). A federal court considering a motion for injunctive relief affecting the

conditions of a prisoner's confinement must give substantial weight to the adverse impact on public safety and on prison operation. 18 U.S.C. § 3626(a)(2); *Stephens*, 494 F. App'x at 911-12. The Supreme Court has declared that courts are not to substitute their judgment on matters of institutional administration for the determinations made by prison officials. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987). Accordingly, courts hesitate to interfere with prison officials' decisions concerning the day-to-day administration of prisons, to which deference must be accorded unless they violate the Constitution or federal law. *See Turner*, 482 U.S. at 84-86.[5] In this regard, Plaintiff has not shown that the requested injunction would not be adverse to the public interest.

For all of these reasons, Plaintiff's request for preliminary injunctive relief should be denied. *See, e.g.*, *Johnson v. Saffle*, No. 99-6148, 2000 WL 130726, at *2 (10th Cir. Feb. 4, 2000) (affirming denial of temporary restraining order where "the relief requested was not consistent with the public interest"); *Church*, 2011 WL 4376222, at *13.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Defendants' Amended Motion for Summary Judgment (Doc. No. 49) be GRANTED. The

---

[5] In *Turner*, the Supreme Court cautioned:

> Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities.

482 U.S. at 84-85.

undersigned further recommends that Plaintiff's pending motions (Doc. Nos. 54, 59) be denied and that the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law negligence claim.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by August 25, 2015, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 4th day of August, 2015.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE